```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division

PHYSICIANS COMMITTEE FOR          )
RESPONSIBLE MEDICINE, et al.      )
                                  )
     Plaintiffs,                  )
                                  )
v.                                )        1:05cv958
                                  )
GENERAL MILLS, INC., et al.       )
                                  )
     Defendants.                  )
```

MEMORANDUM OPINION

The Physicians Committee for Responsible Medicine ("PCRM")[1] and Catherine Holmes ("Holmes"),[2] collectively the "plaintiffs," have sued numerous dairy producers and marketing groups,[3]

---

[1] On its Web site, PCRM describes itself as "Doctors and laypersons working together for compassionate and effective medical practice, research, and health promotion." http://www.pcrm.org/about/. Many other groups believe that PCRM is largely an animal rights organization "interested in perverting medical science." See, e.g., Physician Scam, "7 Things You Didn't Know About PCRM," http://www.physicianscam.com/articles/7things.htm

[2] Holmes is a member of PCRM and is suing in her individual capacity and as a representative of all similarly situated individuals who came into contact with the advertising campaign and relied on its claims to tailor their diet to include dairy products.

[3] The defendants include: General Mills, Inc. ("General Mills") a global food manufacturer; Dannon Company, Inc. ("Dannon"), one of the largest sellers of yogurt in the United States; McNeil-PPC, LLC ("McNeil"), which sells, among other products, Lactaid milk; Lifeway Foods, Inc. ("Lifeway Foods"), which sells, among other products, Kefir, a dairy beverage similar in taste and texture to a drink-style yogurt; Dairy Management, Inc. ("DMI"), a staffing organization created by the National Dairy Promotion and Research Board to run its daily affairs, including generic marketing for dairy products on behalf of America's dairy producers; The National Dairy Council, Inc.

collectively the "defendants," under the Virginia Consumer Protection Act of 1977 ("VCPA") and the Virginia False Advertising Statute ("VFAS"), alleging that various advertising campaigns utilized by the defendants to promote the weight loss benefits of consuming dairy products are false and misleading. The defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  For the reasons stated below, the defendants' motions will be granted.

I.   Background

Plaintiffs allege that, beginning in 2003 and continuing through to the present, the defendants have conducted a national advertising campaign that falsely promotes the consumption of dairy products as a healthy way to lose weight.  The campaign's main theme is that "[i]ncluding 24 ounces of low fat or fat free milk every 24 hours in a reduced-calorie diet provides the calcium and protein to support healthy weight loss." See http://www.milknewsroom.com/index.htm.  Plaintiffs allege that the advertisements are false, violate the VCPA and VFAS, and have

---

("NDC"), an Illinois corporation that shares its headquarters with DMI and was created by DMI as its marketing division; and, International Dairy Foods Association ("IDFA"), which was created by the National Fluid Milk Processor Promotion Board to run its daily affairs, including the promotion of fluid milk on behalf of America's fluid milk producers and processors.

caused them injury.[4]

The plaintiffs initially filed two class action suits against the defendants in the Circuit Court for the City of Alexandria; one in Law[5] and one in Chancery.[6]  Because the

---

[4] Holmes alleges that after seeing and believing the defendants' advertisements, she began purchasing and consuming dairy products in reliance on the advertised diet.  However, after spending $236 on dairy products she would not otherwise have purchased, Holmes actually gained "a small amount of weight."  PCRM claims associational standing to sue on behalf of all its Virginia members who were similarly injured by the allegedly false advertisements.

[5] In the Motion for Judgment, filed on June 28, 2005 (Law No. CL05001320), against IDFA, DMI, NDC, and Lifeway Foods, plaintiffs sued the defendants for violations of the VCPA and the VFAS, seeking compensatory and treble damages for violations of the VCPA as to Holmes, a declaratory judgment on behalf of PCRM's members that the advertisements constitute false and misleading advertising, and recovery of attorney's fees and costs.

Defendants IDFA, DMI, NDC, and Lifeway Foods removed the case to this court, where it was docketed as 1:05cv959.

[6] In the First Amended Bill of Complaint, filed on August 10, 2005 (Chancery No. 05002179), against Kraft Foods, Inc. (which was later voluntarily dismissed), General Mills, Dannon, McNeil, IDFA, DMI, NDC, and Lifeway Foods, plaintiffs alleged similar violations of the VCPA and VFAS but only seek injunctive relief, including a permanent injunction barring further weight loss advertisements and a mandatory injunction requiring the defendants to run corrective advertisements, using financial and other resources identical to those used in the original campaign, to inform the public that consumption of dairy products will not result in weight loss.  Plaintiffs also asked for attorney's fees and costs.

The case was removed by defendants IDFA, DMI, NDC, and Lifeway Foods and docketed as 1:05cv958.

Defendants General Mills, Dannon, and McNeil also removed the case to this court, which docketed it as 1:05cv960.

parties were fully diverse and more than $75,000 in damages was involved,[7] all of the defendants removed the actions to this court, where they were consolidated under the lead case, docketed as 1:05cv958.

## II.  Discussion

In their motion to dismiss, defendants General Mills, Dannon, McNeil, and Lifeway argue that (1) the plaintiffs, as private litigants, cannot obtain injunctive relief under either the VCPA or the VFAS; (2) even if the plaintiffs could sue under these statutes, this civil action would have to be dismissed under the doctrine of primary jurisdiction, which vests jurisdiction in the Federal Trade Commission ("FTC") and the Food and Drug Administration ("FDA"), where the plaintiffs previously filed petitions raising similar claims; (3) PCRM lacks associational standing under both Virginia and federal law; (4) Holmes' claims do not state a proper claim for injunctive relief; and (5) fraud is not pled with particularity.

Defendants IDFA, DMI, and NDC, in their motion to dismiss, incorporate all of the grounds for dismissal cited in defendants General Mills, Dannon, McNeil, and Lifeway's motion to dismiss.

---

[7] The defendants removed the cases pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715, 1332(d), and 1453 (2006), on the grounds that the matter in controversy exceeded the $5,000,000 minimum, as set forth in 28 U.S.C. 1332(d)(2), because the requested injunctive relief would cost the defendants at least that much to implement.

In addition, these defendants argue that (1) plaintiffs may not bar or change the federal government's speech; (2) plaintiffs' claims are preempted because they would interfere with the Dairy and Fluid Milk Promotion Campaign; and (3) plaintiffs' claims under the VCPA and VFAS are not actionable against these defendants.

Because the Court finds that injunctive relief is not available to private individuals under either the VCPA or the VFAS, and finds the primary jurisdiction argument persuasive, the Court will dismiss those claims requesting injunctive relief with prejudice and will decline to address the other arguments presented by the defendants.  The Court also finds that the remaining claims do not pose a federal question upon which the Court could exercise subject matter jurisdiction under 28 U.S.C. § 1331 (2006), and do not provide a basis to exercise diversity jurisdiction under 28 U.S.C. § 1332 (2006), as the matter in controversy would no longer exceed the sum of $75,000.  Lacking subject matter jurisdiction over the case, the Court will exercise its discretion and not exercise supplemental jurisdiction, but will dismiss the remaining claims without prejudice.[8]

---

[8] Without the claims for injunctive relief, the Motion for Judgment, only seeks: (1) Holmes' actual damages of $236, which would be trebled if the violation of the VCPA were found to be willful; (2) Holmes' unaccounted for loss as a result of the violation of the VFAS; and (3) attorney's fees and costs.

A.   Injunctive Relief Under the VCPA or the VFAS

1.   The VCPA

Under the VCPA, Va. Code Ann. §§ 59.1-196 - 59.1-207, it is unlawful for "a supplier in connection with a consumer transaction" to misrepresent "that goods or services have certain quantities, characteristics, ingredients, uses, or benefits;" or to use "any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."  §§ 59.1-200(5) and 59.1-200(14).

The VCPA has two separate enforcement provisions, §§ 59.1-203 and 59.1-204.  Section 59.1-203 is entitled "Restraining prohibited acts" and states in relevant part that,

> A. Notwithstanding any other provisions of law to the contrary, the Attorney General, any attorney for the Commonwealth, or the attorney for any city, county, or town may cause an action to be brought in the appropriate circuit court in the name of the Commonwealth, or of the county, city, or town to enjoin any violation of § 59.1-200.  The circuit court having jurisdiction may enjoin such violations notwithstanding the existence of an adequate remedy at law. In any action under this section, it shall not be necessary that damages be proved.
>
> . . .

---

The only remaining claims as to the First Amended Bill of Complaint after disposing of the requests for declaratory relief are the claims for attorney's fees.  Given the de minimus amount of damages recoverable, it is not possible that the attorney's fees and costs could reasonably exceed $75,000.  See Farrar v. Hobby, 506 U.S. 103, 114-16 (1992) (recognizing that courts should consider the relationship between the extent of success and the amount of the attorney's fee award).

6

>C. The circuit courts are authorized to issue temporary or permanent injunctions to restrain and prevent violations of § 59.1-200.
>
>. . .

Va. Code Ann. § 59.1-203 (2006).

Section 59.1-204, entitled "Individual action for damages or penalty," states in relevant part that,

>A. Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater. If the trier of fact finds that the violation was willful, it may increase damages to an amount not exceeding three times the actual damages sustained, or $1,000, whichever is greater. . . .
>
>B. Notwithstanding any other provision of law to the contrary, in addition to any damages awarded, such person also may be awarded reasonable attorneys' fees and court costs.
>
>. . .

Va. Code Ann. § 59.1-204 (2006).

Defendants argue that the VCPA does not provide private litigants with the right to injunctive relief; rather, this right is reserved to the Attorney General of the Commonwealth and other local officials. Plaintiffs respond by arguing that § 59.1-203(C) provides a clear statement of their right, as a consumer, to seek an injunction.

When interpreting a statute, a court begins "by examining the statutory language." Gadsby v. Grasmick, 109 F.3d 940, 952 (4th Cir. 1997) (quoting United States v. Murphy, 35 F.3d 143, 145 (4th Cir. 1994)). If the statutory language is unambiguous,

7

"the sole function of the courts is to enforce it according to its terms." Gadsby, 109 F.3d at 952 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).

When statutory language does not directly answer the question, the court should look "to some other source of legislative intent." Gadsby, 109 F.3d at 952 (quoting United States v. Southern Management Corp., 955 F.2d 914, 920 (4th Cir. 1992)). As the Supreme Court has stated, "we begin . . . in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs." New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645 (1995). Ultimately, "[s]tatutory construction 'is a holistic endeavor,' . . . and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." Gadsby, 109 F.3d at 952 (quoting United States Nat'l Bank of Or. v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 455 (1993)).

The structure and unambiguous language of the VCPA makes it clear that § 59.1-203 is the vehicle by which government officials enforce violations of § 59.1-200, and § 59.1-204 is the avenue for private party enforcement. Under this statutory scheme, only state and local officials "may cause an action to be brought . . . to enjoin any violation of § 59.1-200."  § 59.1-

8

203(A).  Private individuals who suffer a "loss as the result of a violation of" the VCPA, on the other hand, "shall be entitled to initiate an action to recover actual damages, or $500, whichever is greater."  § 59.1-204(A).

Plaintiffs challenge this interpretation of the statutes under the "longstanding cannon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous."  Beck v. Prupis, 529 U.S. 494, 506 (2000).  They assert that § 59.1-203(A) gives circuit courts not only the authority to enjoin violations, but also empowers the circuit courts to grant injunctive relief absent the usual requirement of finding that any remedy at law would be inadequate and without a plaintiff needing to prove damages.  Plaintiffs further argue that § 59.1-203(C), on the other hand, should be read as granting any person the right to seek injunctive relief only after "they satisfy the standard injunctive requirements."  Pl.'s Mem. in Opp'n at 6.  To find otherwise, the plaintiffs suggest, would be to render subsection (C) superfluous.

Plaintiffs' argument fails for several reasons.  Nothing in the language of § 59.1-203 supports the plaintiffs' argument that the legislature did not intend to limit injunctive relief to government authorities.  Section 59.1-203(A) clearly states that circuit courts may "enjoin" violations of the VCPA, even if an

9

adequate remedy at law exists, but only when the civil action is brought in the name of the Commonwealth by a state official. Section 59.1-203(C), rather than being an independent source of relief, merely clarifies the point that when a government official seeks an injunction under the VCPA, the circuit courts may grant either "temporary or permanent" injunctive relief. The plaintiffs improperly interpret § 59.1-203(C) as if it were an independent statute rather than a part of § 59.1-203. In doing so they misconstrue the full text and structure of the VCPA, which provides an entirely different provision, § 59.1-204, entitled "Individual action for damages or penalty," to address enforcement by, and the remedies available to, private litigants.

Finally, the few published discussions of the enforcement provisions of the VCPA support the defendants' position that injunctive relief is only available to government officials who bring a civil action in the name of the Commonwealth. See e.g., H.D. Oliver Funeral Apartments, Inc. v. Dignity Funeral Services, Inc. 964 F.Supp. 1033, 1039 (E.D. Va. 1997) (noting that there was no provision of the VCPA authorizing the plaintiff, a competitor of the defendant's business, to seek an injunction); In re Fravel, 143 B.R. 1001, 1015 (Bankr. E.D. Va. 1992) ("Section 59.1-204 allows any person who is damaged as a result of § 59.1-200 to bring an action to recover actual damages, or $100, whichever is greater. The section also allows for a

recovery of reasonable attorney's fees and court costs."); <u>VNB Capital Corp. v. Fisher</u>, 1982 WL 215231, at *5 (Va. Cir. Ct. 1982) ("Although the primary enforcement mechanism provided in the VCPA is that of injunctive and civil actions prosecuted by the Attorney General or local enforcement officials, Va. Code 59.1-201, 59.1-202, 59.1-203 and 59.1-206, the Act also provides for individual consumer remedies of damages and restitution Va. Code 59.1-204, 59.1-205 and 59.1-207"); 1989 Op. Att'y Gen. Va. 347, 1989 Va. AG LEXIS 17, *8 ("The [VCPA] does, however, provide for equitable remedies, as well as civil penalties. <u>See</u>, <u>e.g.</u>, §§ 59.1-203 (injunctive actions brought by state or local governments), § 59.1-204 (private actions for damages, attorney's fees and court costs).").

The Court has been able to find only one case to support the plaintiffs' argument. In <u>Synergistic Intern, LLC v. Korman</u>, 402 F. Supp. 2d 651 (E.D. Va. 2005),[9] the plaintiff in a trademark infringement case requested injunctive relief to prevent the defendant from using the similar mark in the future. In noting that, pursuant to 15 U.S.C. § 1116, a court may grant injunctive relief to prevent a violation of 15 U.S.C. §§ 1114 or 1125, the court, in a footnote, stated that "[t]he VCPA also authorizes injunctive relief for violations of the Act," and cited § 59.1-

---

[9] This case was decided subsequent to the briefs related to the motions to dismiss and was therefore not cited by either party.

11

203(C). Id. at 666, n. 6. This cursory mention of the statute in a footnote, however, is not sufficient authority to establish validity to the plaintiffs' position. Instead, the structure of the statute and the clear wording of §§ 59.1-203 and 59.1-204 lead the Court to the inescapable conclusion that injunctive relief is only available when an action is brought by a government official.

Accordingly, the defendants' Motion to Dismiss plaintiffs' claims for injunctive relief under the VCPA will be granted.

### 2. Injunctive Relief Under the VFAS

Plaintiffs also sue the defendants for violating a criminal statute, the VFAS, Va. Code Ann. § 18.2-216 (2006). Section 18.2-216 sets out the substantive crime[10] and §§ 59.1-68.2 - 59.1-68.5 state the remedies available to victims.

Sections 59.1-68.2 and 59.1-68.4 provide that state

---

[10] Section 18.2-216, entitled "Untrue, deceptive or misleading advertising, inducements, writings or documents," states in relevant part,

> Any person, firm, corporation or association who, with intent to sell . . . to the public for sale or distribution or with intent to increase the consumption thereof . . . makes, publishes, disseminates, circulates or places before the public . . . an advertisement of any sort regarding merchandise . . . which advertisement contains any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading . . . shall be guilty of a Class 1 misdemeanor.

Va. Code Ann. § 18.2-216 (2006).

12

officials may investigate and bring a suit in the name of the Commonwealth to "enjoin any violation of Article 8 (§ 18.2-214 et seq.)."

Sections 59.1-68.3 and 59.1-68.5, on the other hand, allow "any person who suffers loss as the result of a violation of Article 8" to "bring an individual action to recover damages, or $100, whichever is greater." In addition to any damages recovered, a plaintiff "may be awarded reasonable attorney's fees." Id.

The plaintiffs attempt to circumvent the obvious bifurcated approach inherent in the structure of the statute by arguing that injunctive relief is available to them under the reasoning of Black and White Cars v. Groome Transportation, 247 Va. 426 (1994), in which the Virginia Supreme Court held that there is a "long standing principle that an injunction is appropriate relief where violation of a penal statute or penal ordinance results in special damage to property rights which would be difficult to quantify." Id. at 430. Plaintiffs argue that the VFAS is obviously penal in nature, but fail to articulate the property right and special damage to a property right, as required by Black and White Cars.

In Black and White Cars, the property right at issue was a franchise to operate a taxicab business. A defendant in that case was not granted a franchise to operate a taxicab business by

13

the City of Norfolk, but was holding itself out as a legitimate taxicab business. The court ruled that the defendant's advertising was infringing on the plaintiffs' property rights, namely the franchises granted by the City. Because the exact amount of damage caused by the advertisements could not easily be calculated, the requirements of both a property right and special damages to that right were demonstrated, thus injunctive relief was appropriate. 247 Va. at 430.

No such facts have been alleged in this case. Plaintiffs have not articulated any property right at issue in the case. Moreover, the penal statute at issue in <u>Black and White Cars</u> did not explicitly state that only government officials could bring an action for injunctive relief. Rather, it was a general statute prohibiting persons from holding themselves out as a taxicab operator without also complying with certain conditions. The VCPA and the VFAS, on the other hand, provide a bifurcated approach to the remedies available to victims of false advertising and misrepresentations. The government can enjoin the false advertising and a private party can seek damages. No other remedies are available to the plaintiffs under this statute.

<u>B.</u>   <u>The Primary Jurisdiction Doctrine</u>

Even if the Virginia statutes at issue provided the remedies the plaintiffs seek, this civil action would have to be dismissed

14

on the basis of the defendants' primary jurisdiction argument. Before plaintiffs filed their Motion for Judgment and Bill of Complaint, they filed two closely related administrative petitions against the same defendants.  On April 21, 2005, the plaintiffs filed a petition with the Federal Trade Commission ("FTC")[11] and on June 9, 2005, they filed a petition with the Food and Drug Administration.[12]  The defendants argue that under the doctrine of primary jurisdiction, and to avoid the risk of inconsistent judgments, this Court should dismiss the plaintiffs' civil actions in deference to the expertise of the FTC and the FDA.

---

[11] Plaintiffs filed a  "Petition to Prohibit False and Misleading Advertising" with the FTC alleging that the defendants' dairy product advertisements are false and misleading in violation of the Federal Trade Commission Act, 15 U.S.C. §§ 41 - 77 (2006).  They seek virtually the same relief as in this litigation: (1) an order permanently prohibiting the dissemination of "dairy/weight loss advertisements and the claims made therein;" and (2) an order requiring the defendants to engage in corrective advertising regarding their weight loss claims.

[12] The petition with the FDA alleges that the defendants' labeling of dairy products under the weight-loss advertisements makes "unauthorized health claims regarding the purported weight and fat loss benefits of dairy products" in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 - 399 (2006).  Again, the relief sought with respect to alleged false labeling is similar to that sought in the present litigation: (1) a declaration that the food products are misbranded; (2) an order requiring the products to be recalled or seized; and (3) an order requiring that future products made by the manufacturers include a "disclosure of affirmative facts" about the purported absence of a scientific connection between dairy consumption and weight loss.

As the Supreme Court observed in <u>Reiter v. Cooper</u>, 507 U.S. 258 (1993),

> [The primary jurisdiction doctrine] is . . . specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency. It requires the court to enable a "referral" to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling. . . . [However,] [r]eferral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.

<u>Id.</u> at 268 (internal citations omitted).  In determining when to apply the primary jurisdiction doctrine, a court should consider

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

<u>Continental Airlines, Inc. v. United Air Lines, Inc.</u>, 120 F. Supp. 2d 556, 573 (E.D. Va. 2000) (citing <u>AT & T Communications of Va. Inc. v. Bell Atlantic-Va., Inc.</u>, 35 F. Supp. 2d 493, 498 (E.D. Va. 1999); <u>National Communications Ass'n v. American Tel. & Tel. Co.</u>, 46 F.3d 220, 223 (2d Cir. 1995)).

Here, all four factors favor dismissal.  First, the FTC has unique expertise in fact-finding on such complicated issues as the probable economic impact on consumers of the defendants'

16

dairy product advertisements.  Similarly, the FDA is better suited to address the scientific issue of the effects of dairy product consumption on weight gain and fat burning.  Second, both the FTC and FDA are authorized to resolve the plaintiffs' administrative petitions.  Specifically, the FTC is authorized to regulate false advertising claims under 15 U.S.C. §§ 45, 52, and 55, and the FDA is authorized to regulate false or misleading labeling of food under 21 U.S.C. § 343(a)(1).  Third, there is clearly a risk of inconsistent judgments if all three proceedings were allowed to proceed independently.  Finally, the plaintiffs clearly made a "prior application" to federal agencies by filing administrative petitions with the FTC and FDA two months and two weeks, respectively, before filing the current litigation.  Therefore, in light of the Continental Airlines factors, the complaint must be dismissed.

    C.    Defendants' Government Speech Argument

Defendants IDFA, DMI, and NDC also argue that the advertisements which plaintiffs seek to enjoin constitute federal "government speech" under Johanns v. Livestock Marketing Ass'n, 544 U.S. 550 (2005), and therefore cannot be stifled by any adverse state law.  Although the plaintiffs acknowledge the validity of the government speech doctrine and concede that some of the advertisements may be protected under it, they argue that a dispositive ruling on the issue of government speech would be

premature at the pleading stage because each statement would need to be evaluated on its own merits. The Court finds this argument meritorious, and therefore declines to dismiss the complaint on this ground.

III. Conclusion

Neither the VCPA nor the VFAS provide non-governmental groups or private individuals the right to seek injunctive relief; this right is reserved to government officials. Moreover, under the doctrine of primary jurisdiction this Court should not be addressing claims while concurrent proceedings addressing essentially the same claims are ongoing in the FTC and FDA. Lastly, without the claims for injunctive relief, the remaining claims of plaintiff Holmes do not meet the jurisdictional requirements for diversity jurisdiction, and do not merit the exercise of supplemental jurisdiction. Accordingly, the plaintiffs' claims for injunctive relief under the VCPA and VFAS will be dismissed with prejudice and Holmes's remaining damage claims will be dismissed without prejudice.

An appropriate Order will issue with this opinion.

Entered this 30th day of November, 2006.

                                              /s/
                                       Leonie M. Brinkema
                                       United States District Judge

Alexandria, Virginia